UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:

MARY G. LARSON,                                    Chapter 7
    Debtor                                         Case No. 05-20790-WCH

## MEMORANDUM OF DECISION REGARDING OBJECTIONS TO EXEMPTION

I. **Introduction**

The matters before the Court are two objections to the state homestead exemption which Mary G. Larson (the "Debtor") claimed in her residence. The creditors and Chapter 7 trustee contend that the homestead claim must be reduced based upon the newly enacted 11 U.S.C. §522(q)(1)(B)(iv). That statute caps a state homestead claim at $125,000 if a debtor owes a debt based upon "any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual preceding 5 years." The Debtor argues that the tragic event that gave rise to her pre-petition criminal negligence is not the type of criminal act that Congress contemplated in enacting the statute. For the reasons set forth below, I conclude that the act that gave rise to the claim was a "criminal act" under the statute and will schedule an evidentiary hearing to determine the extent of the applicability of the homestead cap.

II. **Background**

The Court agrees with the sentiment of all of the parties that the background of this issue arises from a tragic accident. Lloyd Howell et al. (the "Creditors") appended to their Objection

1

by Creditor Lloyd L. Howell at [sic] als to Claim of Exemption by Debtor (the "Objection") the transcript of the criminal proceedings before the Brockton District Court (the "Transcript"). The Transcript reflects that while driving on September 8, 2002, the Debtor took a left-hand turn and failed to yield to Lloyd Howell and his wife as they were traveling on their motorcycle in the opposite direction resulting in a collision. Mr. Howell's wife did not survive the accident.

As a result, the Debtor was charged with Motor Vehicular Homicide by Negligent Operation pursuant to Mass. Gen. Laws ch. 90, § 24G. The Transcript discloses that the state court judge found facts sufficient to find the Debtor guilty. He continued the matter without a finding for one year during which time the Debtor was placed on supervised probation. The Creditor also obtained a civil judgment against the Debtor in the amount of $1,000,000.

On October 11, 2005, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. On Schedule A, she listed a single family residence with a market value of $544,000 subject to a secured claim of $87,484.47 (the "Property"). On Schedule C, she claimed an exemption of $500,000 in the Property pursuant to Mass. Gen. Laws ch. 188, § 1A. Her Schedules reflect that she has two debts, the one to the Creditors and the other to her mortgage holder. She is 72 years old, retired, and her income of $1,883.33 per month is derived from Social Security and a trust. She listed monthly expenses of $2,038.59 which do not include all of the household expenses. Her adult daughter and son-in-law, who reside in the Property along with their five children, pay those additional expenses.

In the Objection, the Creditors argue that the exemption which the Debtor claimed must be reduced from $500,000 to $125,000 as she committed a criminal act that caused a death

2

within five years of the filing of this case.[1] In support they cite to 11 U.S.C. § 522(q)(1)(B)(iv) which provides as follows:

> (q)(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $125,000 if -- . . .
>     (B) the debtor owes a debt arising from – . . .
>         (iv) any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years.[2]

In response, the Debtor argues that the Creditors failed to meet their burden to establish that she did not properly claim her exemption. She correctly states that there is no definition of "criminal act" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). She contends that when considering the phrase "criminal act" in conjunction with "intentional tort" and "willful or reckless misconduct," Congress must have meant to include conduct involving something greater than negligence. In support of this argument, the Debtor cites to legislative history of a comparable earlier version of the statute which provides that the drafters intended that "the language in Section 522(q)(1) be liberally construed to encompass misconduct that rises above mere negligence under applicable state law." H.R. Conf. Rep. No. 107-617. She opines that Congress could not have intended to include within this statute all of

---

[1] The Chapter 7 trustee filed an objection to the Debtor's homestead exemption in which he adopted the Creditors' arguments.

[2] 11 U.S.C. § 522(p)(1) provides, in part:
Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in –(A) real or personal property that he debtor or a dependant of the debtor uses as a residence; . . .

3

the criminal statutes contained in the Massachusetts General Laws. Congress may have even intended, she ponders, that the "criminal act" requirement could be met only by means of a conviction, an event which did not occur in this case.

The Debtor further buttresses her argument by explaining that the statute under which she was charged involved negligence, which under Massachusetts law is a lesser charge than reckless conduct. She also explains that state exemptions in Massachusetts should be liberally applied. She lastly argues that the reduction in her homestead should not apply pursuant to 11 U.S.C. § 522(q)(2) as her claimed homestead is reasonably necessary for her support.[3]

In their reply to the Debtor's response, the Creditors argue that the phrases "criminal act," "intentional tort" and "willful or reckless conduct" must be read in the disjunctive and given their ordinary meaning. They further claim that when the ordinary meaning is unambiguous, I may not construe the language further. The definition of the phrase "criminal act," they contend, is without ambiguity and the instruction to liberally construe homestead exemptions cannot overcome that lack of ambiguity.

The Creditors also dismiss the Debtor's argument that Congress must have intended "criminal act" to include a conviction. In support, they cite to 11 U.S.C. § 522(q)(1)(A) which provides that a debtor may not claim an exemption of more than $125,000 in property if "the court determines, after notice and a hearing, that the debtor has been convicted of a felony . . . which under the circumstances, demonstrates that the filing of the case was an abuse of the

---

[3] That subsection provides that the statutory reduction of the claimed homestead "shall not apply to the extent the amount of an interest in property described in subparagraphs (A) (B), (C), and (D) of subsection (p)(1) is reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(q)(2).

4

provisions of this title . . . " The Creditors contend that by inserting the verb "convicted" in subsection (1)(A) of § 522(q), Congress must have intentionally omitted it from subsection (q)(1)(B)(iv). The fact that the charge against the Debtor was continued without a finding is irrelevant, the Creditors contend, because under Massachusetts law the Debtor's admission before the trial judge was the equivalent of a guilty plea.

With respect to the legislative history, the Creditors contend that it was related to a bankruptcy reform act which was never enacted. They further argue that no such history appears in BAPCPA. Lastly, the Creditors contend that the Debtor's argument that the claimed amount of her exemption is necessary for her support is unsubstantiated as her expenses cannot withstand scrutiny.

After a hearing, at which time the parties further discussed the forgoing arguments, I took the matter under advisement.

### III. Discussion

The issue before the Court is whether the Debtor's claimed exemption must be reduced to $125,000 as a result of the accident which caused the death of the Creditor's wife. Specifically, I must decide whether the accident constituted a "criminal act" for purposes of 11 U.S.C. § 522(q)(B)(iv).

The Supreme Court instructs that the "starting point in discerning congressional intent is the existing statutory text . . . " *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). Further, "'when the statute's language is plain, the sole function of the courts - - at least where the disposition required by the text is not absurd - - is to enforce it according to its terms.'" *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*, 530 U.S. 1, 6 (2000)).

5

*See also United States v. Yellin (In re Weinstein)*, 272 F.3d 39, 43 (1st Cir. 2001) (explaining that Bankruptcy Code interpretation stops when text is sufficiently clear).

The statute provides for a reduction in a homestead based upon "any criminal act, intentional tort, or willful or reckless misconduct . . . " The three acts are written in the disjunctive and therefore, "criminal act" stands alone as one cause for reduction. The issue becomes whether the phrase is sufficiently clear.

An earlier edition of Black's Law Dictionary defined "criminal act" as the commission of a crime. Black's Law Dictionary, (5th ed. 1979). The present edition defines "criminal" as "[h]aving the character of a crime;" Black's Law Dictionary, (8th ed. 2004). It defines "act" as the "process of doing or performing . . . " *Id*. Although the present edition does not contain a definition for the phrase "criminal act," it appears in other definitions. *See. e.g.,* "specific intent" ("The intent to accomplish the precise criminal act that one is later charged with.") and "criminal instrumentality rule" ("The principal that when a criminal act is committed, that act –rather than the victim's negligence . . . "). *Id*.

> One treatise contains the following section regarding "Criminal act or omission":
>
> In order to constitute a criminal offense, there must be a criminal act or omission in addition to a criminal intent.
> Some act of commission or omission lies at the foundation of every crime. In order to constitute a criminal offense, there must be a sufficient criminal act or omission as well as a criminal intent; mere criminal intention is not punishable.
> . . . A person must participate in all the acts necessary to constitute a particular crime in order to be guilty thereof.

22 C.J.S. Criminal Law § 44 (2005). *See also* Am. Jur. 2d Criminal Law, § 4 (2004) ("Elements and requisites of a crime or criminal act--Commission's of a prohibited act. In order for a state to

6

impose criminal penalties on an individual, it must be shown that he committed some unlawful act or engaged in some prohibited course of conduct, together with a wrongful intent or mens rea.").

The reference to a criminal act appears in variety of reported cases. In discussing an appropriate venue for a criminal trial, the Supreme Court agreed that the site of the offense must be decided by examining the nature of the crime and the "location of the act." *United States v. Cabrales*, 524 U.S. 1, 5 (1998). The Fifth Circuit has repeatedly held that the phrase "criminal acts of violence" has a common sense meaning that does not need to be defined for purposes of jury instruction. *See, e.g., Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005) and *Woods v. Johnson*, 75 F.3d 1017, 1034 (5th 1996).

The phrase has been the subject of much discussion as it relates to exclusions in insurance policies. *See, e.g., Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1247 (1997). In that case, the defendant argued that the exclusion for a criminal act was ambiguous and should be read to mean only intentional crimes. The court disagreed based upon the dictionary definition, the language of the statute and nationwide case law. *See also National Fire and Cas. Co. v. West By and Through Norris*, 107 F.3d 531, 536 (7th Cir. 1997) ("Courts have given the phrase 'criminal act' in insurance policy exclusion its plain meaning."); *Redux, Ltd. v. Commercial Union Ins. Co.*, 1995 WL 88251* 1 (D. Kan. 1995) ("The court finds that the plain meaning of the term 'criminal act' does not require an adjudication in a court of law. Thus, the term shall be construed in this case in its ordinary sense to include acts which would amount to or constitute a crime, namely the crime of arson, under the law of Kansas."); *Allstate Ins. Co. v. Barnett*, 816 F.Supp 492, 496 (S.D. Ind. 1993) (providing list of state courts holding "criminal act" exclusion should be given

7

plain meaning).

When confronted with a similar exclusion involving criminal acts conducted by an insured with diminished capacity, the Massachusetts Court of Appeals wrote as follows:

> Another (and perhaps more natural reading) is that the insured must have been guilty (whether or not actually convicted) of an offense as defined in the relevant criminal code. . . . If one assumed the rather scholastic actus reus/mens rea formulation, it is natural to reason that the actus reus must have been voluntary (knowing), and where the actor is mentally disabled, that element is lacking. . . . We question whether [the dictionary] can serve as the meaning of 'criminal acts,' anyway, if that meaning were adopted, it would misfire when sought to be applied to an insured incapable of rational judgment. . . . But an at least equally plausible meaning (indeed, we guess the insured would say a more plausible meaning) is that a person who is not convicted, or convictable, of a crime has not committed a criminal act, or that a person who is incapable of rational thinking or action at the time has not committed a criminal act.

*Swift v. Fitchburg Mutual Ins. Co.*, 700 N.E.2d 288, 294 (1998).[4]

All of the forgoing authorities, including the one case from Massachusetts, recognize that the phrase "criminal act" does not require a conviction or a certain level of culpability. To read 11 U.S.C. § 522(q)(1)(B)(iv) in this way is also consistent with a second applicable rule of statutory construction. That is, where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 104 U.S. 296, 300 (1983) (citing *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972). Because Congress requires a conviction for purposes of § 522(q)(1)(A) and a criminal act for § 522 (q)(1)(B)(iv), the latter cannot include the requirement of the former. *See Hart v. Hart,*

---

[4]*See also Allstate Ins. Co. v. Barron*, 848 A.2d 1165, 1179 (2004) (relying in part on *Swift* to conclude that "'criminal acts,' within the meaning of that clause, are acts for which the insured was or could be convicted under applicable criminal law.")

8

328 F.3d 45, 49 (1st Cir. 2003) ("Had congress intended to restrict [the statute] to an interest in an enterprise, it presumably would have done so expressly as it did in the immediately following subsection (a)(2).").

Based upon the forgoing, I conclude that the term "criminal act" is sufficiently clear and that its application does not lead to an absurd result. I further conclude that the language does not have or require a descriptive culpability. In this case, I am not asked to determine whether the Debtor committed a "criminal act" as the record is clear that she admitted sufficient facts regarding such an act in state court.[5] The Debtor, however, has requested and must be afforded an opportunity to present evidence regarding whether the difference between her claimed and capped state homestead is necessary for her support. I cannot determine the ultimate amount of her homestead until the conclusion of such a hearing.

## IV. Conclusion

Based upon the forgoing, I will schedule an evidentiary hearing to determine the extent of the applicability of the homestead cap under 11 U.S.C. § 522(q)(2) and thereafter issue an order on the objections to homestead.

Dated: 4/5/06

William C. Hillman
U.S. Bankruptcy Judge

For the Debtor:. Gary W. Cruickshank, Esq
For the Creditor: Edward Fegreus, Esq. and Richard Askenase, Esq
For the Trustee: Stephen Shamban, Esq.

---

[5] *See Comm. v. Sebastian S.*, 827 N.E.2d 700, 714 (2005).

9